E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0813
    Facsimile: (213) 894-0141
    E-mail:   daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 2:23-00114-MEMF |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT SANDU DUMITRESCU |
| v. | |
| SANDU DUMITRESCU, | |
| Defendant. | |

1. This constitutes the plea agreement between SANDU DUMITRESCU ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a. At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count 1 of the indictment in United States v. SANDU DUMITRESCU, CR No. 2:23-00114-

DM
5.8.23

MEMF, which charges defendant with bank fraud in violation of 18 U.S.C. § 1344(2).

  b. Not contest facts agreed to in this agreement.

  c. Abide by all agreements regarding sentencing contained in this agreement.

  d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

  e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

  f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

  g. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

  h. Recommend that defendant be sentenced to a term of imprisonment of no less than 14 months and not seek, argue, or suggest in any way, either orally or in writing, that the Court impose a term of imprisonment below 14 months.

 3. Defendant further agrees:

  a. To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following: $2,890 in U.S. Currency seized on March 1, 2023 and an

1   automated teller machine ("ATM") skimming device (collectively, the

2   "Forfeitable Assets").

3           b.    To the Court's entry of an order of forfeiture at or

4   before sentencing with respect to the Forfeitable Assets and to the

5   forfeiture of the assets.

6           c.    To take whatever steps are necessary to pass to the

7   United States clear title to the Forfeitable Assets, including,

8   without limitation, the execution of a consent decree of forfeiture

9   and the completing of any other legal documents required for the

10  transfer of title to the United States.

11          d.    Not to contest any administrative forfeiture

12  proceedings or civil judicial proceedings commenced against the

13  Forfeitable Assets.  If defendant submitted a claim and/or petition

14  for remission for all or part of the Forfeitable Assets on behalf of

15  himself or any other individual or entity, defendant shall and hereby

16  does withdraw any such claims or petitions, and further agrees to

17  waive any right he may have to seek remission or mitigation of the

18  forfeiture of the Forfeitable Assets.

19          e.    Not to assist any other individual in any effort

20  falsely to contest the forfeiture of the Forfeitable Assets.

21          f.    Not to claim that reasonable cause to seize the

22  Forfeitable Assets was lacking.

23          g.    To prevent the transfer, sale, destruction, or loss of

24  any and all assets described above to the extent defendant has the

25  ability to do so.

26          h.    To fill out and deliver to the USAO a completed

27  financial statement listing defendant's assets on a form provided by

28  the USAO.  That forfeiture of Forfeitable Assets shall not be counted

1  toward satisfaction of any special assessment, fine, restitution,
2  costs, or other penalty the Court may impose.

THE USAO'S OBLIGATIONS

4  4.   The USAO agrees to:

5       a.   Not contest facts agreed to in this agreement.

6       b.   Abide by all agreements regarding sentencing contained
7  in this agreement.

8       c.   At the time of sentencing, move to dismiss the
9  remaining counts of the indictment as against defendant.  Defendant
10 agrees, however, that at the time of sentencing the Court may
11 consider any dismissed charges in determining the applicable
12 Sentencing Guidelines range, the propriety and extent of any
13 departure from that range, and the sentence to be imposed.

14      d.   At the time of sentencing, provided that defendant
15 demonstrates an acceptance of responsibility for the offense up to
16 and including the time of sentencing, recommend a two-level reduction
17 in the applicable Sentencing Guidelines offense level, pursuant to
18 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
19 additional one-level reduction if available under that section.

20      e.   Recommend that defendant be sentenced to a term of
21 imprisonment of no more than 14 months, provided that the offense
22 level used by the Court to determine that range is 11 or higher.

NATURE OF THE OFFENSE

24 5.   Defendant understands that for defendant to be guilty of
25 the crime charged in count 1, that is, bank fraud, in violation of
26 Title 18 United States Code, Section 1344(2), the following must be
27 true: (1) the defendant knowingly carried out a scheme or plan to
28 obtain money or property from Wells Fargo Bank, by making false

4

statements or promises; (2) the defendant knew that the statements or promises were false; (3) the statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property; (4) the defendant acted with the intent to defraud; and (5) Wells Fargo Bank was federally insured.

PENALTIES AND RESTITUTION

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1344(2), is: 30 years' imprisonment; a 5-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty ; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately

$2,890, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable

and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

11. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

On March 1, 2023, in Los Angeles County, within the Central District of California, defendant knowingly and with intent to defraud, devised and executed a scheme to obtain moneys, funds, assets, and other property owned by and in the custody and control of financial institutions, including Wells Fargo Bank, by means of

material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.  The fraudulent scheme operated, and was carried out, in substance, in the following manner.

Defendant would install skimming devices and hidden cameras on ATMs to surreptitiously steal and store card account numbers and personal identification numbers ("PINs") information from cards, including Electronic Benefit Transfer ("EBT") cards, that were inserted into ATM machines.  These EBT cards belonged to other people and the California Department of Social Services issued them through the CalFresh and CalWorks benefits programs.  These benefits were intended for low-income California residents to help pay for expenses, such as housing, utilities, medical care, and food.

Defendant obtained cloned EBT cards that had been re-encoded with EBT account numbers, including CalFresh and CalWorks account numbers, and PIN and personal identifying information retrieved from skimming devices, in names other than his own, that belonged to EBT beneficiaries.  Defendant used the re-encoded EBT cards, along with the corresponding stolen PIN numbers and personal identifying information, to conduct fraudulent cash withdrawals, including of CalFresh and CalWorks benefits, without permission or authorization from the EBT account holders.  In doing so, defendant falsely represented that he was the EBT account holder and was otherwise an authorized user of the EBT card, and concealed that the withdrawals he made with the re-encoded EBT cards were made without the authorized user's consent.  At the time of his arrest, defendant possessed 17 EBT account numbers, none of which were issued in his name, and his possession of these account numbers affected interstate

and foreign commerce. In connection with this possession defendant knowingly possessed and used, without lawful authority, a means of identification that defendant knew belonged to another person, namely, the PIN of victim R.E.

Specifically, on March 1, 2023, in Los Angeles County, within the Central District of California, defendant committed the following acts, each of which constituted an execution of the scheme:

1. Defendant used an EBT card issued in the name of G.O. to withdraw $180 at a Wells Fargo Bank ATM in Panorama City, California.

2. Defendant used an EBT card issued in the name of S.A. to withdraw $890 at a Wells Fargo Bank ATM in Panorama City, California.

3. Defendant used an EBT card issued in the name of M.G. to withdraw $380 at a Wells Fargo Bank ATM in Panorama City, California.

4. Defendant used an EBT card issued in the name of R.D. to withdraw $880 at a Wells Fargo Bank ATM in Panorama City, California.

5. Defendant used an EBT card issued in the name of L.B. to withdraw $380 at a Wells Fargo Bank ATM in Panorama City, California.

6. Defendant used an EBT card issued in the name of T.S. to withdraw $180 at a Wells Fargo Bank ATM in Panorama City, California.

These withdrawals total $2,890 in U.S. currency, which defendant obtained knowingly and with the intent to defraud and these withdrawals affected interstate commerce.  After defendant obtained

the $2,890 in U.S. currency as described above, the remaining balance on the 17 EBT cards that defendant knowingly possessed with the intent to defraud was $11,285.76 in U.S. currency.

On March 1, 2023, Wells Fargo Bank was a financial institution that was insured by the Federal Deposit Insurance Corporation.

Also on March 1, 2023, in Los Angeles County, within the Central District of California, defendant knowingly transferred, possessed, and used, without lawful authority, a means of identification that defendant knew belonged to another person, namely, the account number and PIN of victim S.A., during and in relation to the scheme described above. Defendant knew that S.A. was a real person.

Also on March 1, 2023, in Los Angeles County, within the Central District of California, defendant knowingly and with intent to defraud, had custody and control of, and possessed, device-making equipment, namely, an ATM skimming device and pinhole camera, with said custody, control, and possession affecting interstate and foreign commerce.

<u>SENTENCING FACTORS</u>

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds

10

1  appropriate up to the maximum set by statute for the crime of

2  conviction.

3      13.  Defendant and the USAO agree to the following applicable

4  Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss between $6,500 and $14,999 | +2 | U.S.S.G. § 2B1.1(b)(1) |
| Involved 10+ victims | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |
| Involved device-making equipment | +2 | U.S.S.G. § 2B1.1(b)(11) |

10  Defendant and the USAO reserve the right to argue that additional

11  specific offense characteristics, adjustments, and departures under

12  the Sentencing Guidelines are appropriate.

13      14.  Defendant understands that there is no agreement as to

14  defendant's criminal history or criminal history category.

15      15.  Defendant and the USAO reserve the right to argue for a

16  sentence outside the sentencing range established by the Sentencing

17  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

18  (a)(2), (a)(3), (a)(6), and (a)(7).

19  <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20      16.  Defendant understands that by pleading guilty, defendant

21  gives up the following rights:

22          a.  The right to persist in a plea of not guilty.

23          b.  The right to a speedy and public trial by jury.

24          c.  The right to be represented by counsel -- and if

25  necessary have the Court appoint counsel -- at trial.  Defendant

26  understands, however, that, defendant retains the right to be

27  represented by counsel -- and if necessary have the Court appoint

28  counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

17.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## WAIVER OF COLLATERAL ATTACK AND LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

18.  Defendant agrees that, provided the Court imposes a total term of imprisonment within or below the range corresponding to an

offense level of 11 and the criminal history calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $2,890; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

20.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 11 and the criminal history calculated by the Court, the USAO gives up its right to appeal any portion of the sentence ,with the exception that the USAO reserves the right to appeal the following: (a) the amount of restitution ordered if that amount is less than $2,890.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

21.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

22.   Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

14

1

## EFFECTIVE DATE OF AGREEMENT

2     23.   This agreement is effective upon signature and execution of
3  all required certifications by defendant, defendant's counsel, and an
4  Assistant United States Attorney.

5

## BREACH OF AGREEMENT

6     24.   Defendant agrees that if defendant, at any time after the
7  signature of this agreement and execution of all required
8  certifications by defendant, defendant's counsel, and an Assistant
9  United States Attorney, knowingly violates or fails to perform any of
10 defendant's obligations under this agreement ("a breach"), the USAO
11 may declare this agreement breached.  All of defendant's obligations
12 are material, a single breach of this agreement is sufficient for the
13 USAO to declare a breach, and defendant shall not be deemed to have
14 cured a breach without the express agreement of the USAO in writing.
15 If the USAO declares this agreement breached, and the Court finds
16 such a breach to have occurred, then: (a) if defendant has previously
17 entered a guilty plea pursuant to this agreement, defendant will not
18 be able to withdraw the guilty plea, and (b) the USAO will be
19 relieved of all its obligations under this agreement.

20    25.   Following the Court's finding of a knowing breach of this
21 agreement by defendant, should the USAO choose to pursue any charge
22 that was either dismissed or not filed as a result of this agreement,
23 then:

24         a.   Defendant agrees that any applicable statute of
25 limitations is tolled between the date of defendant's signing of this
26 agreement and the filing commencing any such action.

27         b.   Defendant waives and gives up all defenses based on
28 the statute of limitations, any claim of pre-indictment delay, or any

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

26.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

27.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it

chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

28.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

29.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

17

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

30.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney


_____        5/18/2023
DANIEL H. WEINER                        _____
Assistant United States Attorney        Date


_____        _____
SANDU DUMITRESCU                        5/15/23
Defendant                               Date


_____        _____
OLIVER CLEARY                           5/15/23
Attorney for Defendant SANDU            Date
DUMITRESCU

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  This agreement has been read to me in Romanian, the language I understand best.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          5/15/27
SANDU DUMITRESCU                          Date
Defendant

## CERTIFICATION OF INTERPRETER

I, _Vic Monafu_ am fluent in the written and spoken English and Romanian languages.  I accurately translated this entire agreement from English into Romanian to defendant SANDU DUMITRESCU on this date.

_____        Date _5/15/2023_
INTERPRETER

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am SANDU DUMITRESCU's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____        Date _5/15/23_
OLIVER CLEARY
Attorney for Defendant SANDU
DUMITRESCU