E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0813
     Facsimile: (213) 894-6269
     E-mail:    daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:23-00114-MEMF |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Hearing Date: September 22, 2023 |
| SANDU DUMITRESCU, | Hearing Time: 10:00 a.m. |
| Defendant. | Location:    Courtroom of the Hon. Maame Ewusi-Mensah Frimpong |

    Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorney Daniel H. Weiner,
hereby files its Sentencing Position.

//

//

//

1        This Sentencing Position is based upon the attached memorandum

2   of points and authorities, the files and records in this case, and

3   such further evidence and argument as the Court may permit.

4        The government respectfully requests the opportunity to

5   supplement its position or respond to any positions asserted by the

6   defense or the United States Pretrial and Probation Office as may

7   become necessary.

8

9   Dated: September 8, 2023          Respectfully submitted,

10                                     E. MARTIN ESTRADA
                                       United States Attorney
11
                                       MACK E. JENKINS
12                                     Assistant United States Attorney
                                       Chief, Criminal Division
13

14                                     */s/ Daniel H. Weiner*
                                       DANIEL H. WEINER
15                                     Assistant United States Attorney

16                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA
17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3      Defendant Sandu Dumitrescu ("defendant") executed a scheme to
4 defraud some of California's most vulnerable citizens, i.e., those
5 who depend on state benefits for their basic necessities.
6 Specifically, defendant obtained and used cloned Electronic Benefit
7 Transfer ("EBT") cards to withdraw funds that belonged to
8 Californians enrolled in the California Department of Social Services
9 ("DSS") CalFresh and CalWorks benefits programs.  For his crimes, the
10 government charged defendant with: six counts of bank fraud in
11 violation of 18 U.S.C. § 1344(2); two counts of aggravated identity
12 theft in violation of 18 U.S.C. § 1028A(a)(1); one count of unlawful
13 use of unauthorized access devices in violation of 18 U.S.C.
14 § 1029(a)(2); one count of possession of fifteen or more unauthorized
15 access devices in violation of 18 U.S.C. § 1029(a)(3); and one count
16 of possession of device-making equipment in violation of 18 U.S.C.
17 § 1029(a)(4).  (Dkt. 9.)  On June 9, 2023, defendant pleaded guilty
18 pursuant to a plea agreement to count 1 of the indictment, which
19 charged defendant with bank fraud.  (Dkt. 22.)

20      As described further below, the government requests that the
21 Court impose a sentence of 14 months' imprisonment, which is the
22 high-end of the applicable Guidelines range.  Additionally, the Court
23 should: (i) order that $2,890 in restitution be paid to DSS; (ii)
24 impose a $100 special assessment; and (iii) impose two years'
25 supervised release.

26

**II.   DEFENDANT DEFRAUDED VULNERABLE VICTIMS OF THEIR STATE BENEFITS**

27      Defendant obtained and used multiple cloned EBT cards to
28 fraudulently withdraw $2,890 from an ATM machine in Panorama City,

California.  (PSR ¶¶ 17-21.)  As detailed in the PSR, this conduct targeted and affected some of the most-vulnerable Californians, i.e., those who rely on state benefits to eat and pay rent.  (PSR ¶¶ 17-18.)  For example, victim S.A. told law enforcement that she had no money to pay for rent after defendant fraudulently withdrew her EBT funds.  (Id. ¶ 28.)  When law enforcement arrested defendant, he possessed 17 cloned EBT cards with a total remaining balance of $11,285.76, and a skimming device that could be used to clone more cards.  (Id. ¶¶ 22, 24.)

**III. PSR GUIDELINES CALCULATIONS**

The USPPO calculated defendant's total offense level as 11, pursuant to the following calculation:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss between $6,500 and $14,999 (intended loss) | +2 | U.S.S.G. § 2B1.1(b)(1) |
| Involved 10+ victims | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |
| Involved device-making equipment | +2 | U.S.S.G. § 2B1.1(b)(11)(A) |

(Id. ¶¶ 34-43.)  After a two-point downward adjustment for acceptance of responsibility pursuant to § 3E1.1(a), the USPPO calculated defendant's total offense level as 11.  (Id. ¶ 50.)  The USPPO also calculated defendant's criminal history to be Category I.  (Id. ¶ 56.)  With a total offense level of 11 and a Criminal History Category of I, the resulting Guidelines range is 8-14 months' imprisonment.  (Id. ¶ 97.)  The government agrees with these calculations.[1]

---

[1] The government acknowledges that defendant would qualify for a two-level downward adjustment pursuant to U.S.S.G. § 4C1.1 (zero criminal history points) if that section were in effect on the date of defendant's sentencing (and which the Sentencing Commission voted

*(footnote cont'd on next page)*

2

1    The USPPO issued its Recommendation Letter ("USPPO Rec.") and

2   recommended defendant be sentenced to a low-end term of 8 months'

3   imprisonment followed by a two-year period of supervised release.

4   (USPPO Rec., Dkt. 24.)  USPPO also recommended defendant be ordered

5   to pay $2,890 in restitution to DSS.

6   **IV.  A HIGH-END, 14-MONTH SENTENCE IS WARRANTED**

7    The government recommends that the Court order $2,890 to be paid

8   in restitution to DSS, and sentence defendant to a within-Guidelines,

9   high-end sentence of 14 months' imprisonment, followed by a two-year

10  period of supervised release; a $100 special assessment; and no fine,

11  as it appears defendant lacks the ability to pay a fine (PSR ¶ 100).

12  Such a sentence – which is at the high-end of the advisory Guidelines

13  imprisonment range – is sufficient, but not greater than necessary,

14  to achieve the purposes set forth in 18 U.S.C. § 3553(a).

15  Accordingly, the government respectfully disagrees with the USPPO's

16  recommendation for a low-end term of imprisonment.

17   **A.  Nature And Circumstances Of The Offense**

18    The nature and circumstances of the offense are serious and

19  support a high-end sentence of 14 months' imprisonment.  <u>See</u> 18

20  U.S.C. § 3553(a)(1).  Defendant defrauded vulnerable Californians of

21  funds to purchase basic necessities.  Although defendant states that

22  he did not know the cloned cards he used were EBT cards (PSR ¶ 31),

23  he nonetheless knew that he was fraudulently obtaining money from

24  multiple victims.  Indeed, defendant obtained nearly $3,000 in

25

26  to make retroactive).  The resulting offense level would be 9 and the
    Guidelines range would, therefore, be 4-10 months' imprisonment.
27  However, given the parties joint recommendation in the plea agreement
    for a 14-month sentence and given defendant's conduct targeting and
28  affecting vulnerable victims, the government continues to recommend a
    14-month term of imprisonment.

just a matter of minutes from six EBT beneficiaries.  (Id. ¶ 37.)
Accordingly, the nature and circumstances of the offense warrant a
high-end sentence.

**B.   History And Characteristics Of Defendant**

Defendant's history and characteristics also warrant the
government's recommended sentence.  See 18 U.S.C. § 3553(a)(1).

As a threshold matter, the government recognizes defendant's
early acceptance of responsibility, his struggles with substance
abuse, and the abuse he suffered as a child.  (PSR ¶¶ 49, 68, 91-94.)
However, defendant has a documented history of fraud tourism,
evidenced by his multiple overseas convictions for various fraud-
related crimes.  (Id. ¶ 57.)  In short, defendant's own choices
directly impacted vulnerable victims, and accordingly warrant the
government's recommended sentence.

**C.   Need To Reflect Seriousness Of Offense; Promote Respect For
The Law; Provide Just Punishment; Afford Adequate
Deterrence; And Protect The Public From Further Crimes**

The sentence must satisfy the need to punish defendant, as well
as society's need to reflect the seriousness of the offense; promote
respect for the law; provide just punishment; afford adequate
deterrence; and protect the public.  18 U.S.C. § 3553(a)(2).  Those
objectives justify the government's recommended within-Guidelines
sentence of 14 months' imprisonment.

A within-Guidelines custodial sentence reflects the seriousness
of defendant's illegal conduct, including his history of
international fraud, and will adequately deter defendant and protect
the public.

4

**D.   Need To Avoid Unwarranted Disparities**

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants.  One way of doing so is to correctly calculate the Guidelines range and then sentence defendants within that range.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."), overruled on other grounds by United States v. Miller, 953 F.3d 1095, 1103 (9th Cir. 2020); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").  Here, under the correctly calculated Guidelines range, other defendants "with similar records who have been found guilty of similar conduct" as defendant, can expect a prison sentence between 8 to 14 months' imprisonment.  See U.S.S.G. § 5A (Sentencing Table).  As such, the government's recommended sentence, which is at the high-end of that range, avoids an unwarranted disparity with similarly situated defendants.

**E.   A Two-Year Term Of Supervised Release Is Just And Appropriate**

The government agrees with the USPPO's recommendation that the Court impose a two-year term of supervised release following imprisonment.  Given the seriousness of the instant offense and the other considerations stated above, a two-year period of supervised release is necessary to provide defendant with oversight and supervision after his release from prison.  See United States v. Johnson, 529 U.S. 53, 59 (2000) ("Congress intended supervised

release to assist individuals in their transition to community life."); S. Rep. No. 98-225, at 124 (1983) (describing the "primary goal" of supervised release as providing "rehabilitation").

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court impose the following sentence: (1) a within-Guidelines, high-end term of imprisonment of 14 months; (2) a two-year period of supervised release with terms and conditions as recommended by the USPPO; (3) a $100 special assessment; (4) the waiver of fines; and (5) to order restitution to be paid to DSS in the amount of $2,890.